IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOHNNY J. LITTLEFIELD,       )
                            )
      Plaintiff,          )
                            )
v.                       )       CASE NO. 2:12-cv-578-MEF
                            )        (WO – Do Not Publish)
ROCK-TENN SOUTHERN CONTAINER, )
LLC,                     )
                            )
      Defendant.       )

## MEMORANDUM OPINION AND ORDER

Plaintiff Johnny Littlefield ("Plaintiff" or "Littlefield") filed this action against Defendant Rock-Tenn Southern Container, LLC ("Defendant" or "Rock-Tenn"), alleging that he suffered damages as a result of slipping on a patch of ice at one of their loading facilities. This cause is before the Court on Rock-Tenn's Motion for Summary Judgment (Doc. #17). Having reviewed the motion and the briefs of the parties, the evidentiary submissions, and the record as a whole, the Court finds that Rock-Tenn's motion is due to be GRANTED.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.[1] The parties do not contest personal jurisdiction or venue, and the Court finds

---

[1] This action was originally filed in the Circuit Court of Barbour County, Alabama. (Doc. #1-2.) Defendant Rock-Tenn removed this action to federal court on the basis of diversity jurisdiction, and Littlefield moved to remand. (Docs. #1, 5.) Littlefield's motion to remand was denied on July 3, 2013. (Doc. #9.)

adequate allegations in support of both.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine [dispute] of material fact." *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, the non-moving party must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotations omitted).  To avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A plaintiff must present evidence demonstrating that he can establish the basic elements of his

claim, *Celotex*, 477 U.S. at 322, because "conclusory allegations without specific supporting facts have no probative value" at the summary judgment stage. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

### III.  FACTS

The Court has carefully considered the parties' submissions in support of and in opposition to the motion. The facts here are not in dispute, unless otherwise noted, and when viewed in the light most favorable to the non-moving party, establish the following:

In early January 2010, much of middle Tennessee, including Murfreesboro, had been experiencing winter weather conditions. Temperatures had been dipping into the teens the first week of that month, and news sources forecasted 1 to 2 inches of snow accumulation for the afternoon/early evening on January 7, 2010. Between early morning on January 7, 2010, and early morning on January 8, 2010, Murfreesboro experienced approximately 0.3 inches of snow, ice, or hail according to the National Climatic Data Center. Much of the snow and wetness turned to ice by the evening of January 7, 2010, when the temperatures

dropped well below freezing.[2]

Littlefield was employed by Supreme Oil Company as a truck driver.  On January 7, 2010, in the course of his employment, Littlefield drove a tractor-trailer to Rock-Tenn's Murfreesboro facility to pick up a load of cardboard boxes.  Littlefield had made these pick-ups before and was familiar with Rock-Tenn's facility in Murfreesboro.  Littlefield was aware of the ice storm alerts that night, and when he arrived at the facility, he testified it was raining, sleeting, and cold.

Littlefield backed his trailer up to the second loading door and exited his tractor.  He then walked around the front of his tractor toward the entrance to the Rock-Tenn building. Littlefield testified that the walkway was a "little slick" but that he did not notice any ice formation.  Littlefield entered the Rock-Tenn building without incident and informed one of its employees, Latoya Odum ("Odum"), that he was there to pick up a load for Supreme Oil Company.  Littlefield did not tell Odum or any other Rock-Tenn employee at that time that the walkway to the building's entrance was slick or that ice had accumulated on or around the walkway.  Littlefield then went to the restroom, got a drink, and exited the building.  As Littlefield walked back to his tractor, he slipped and fell on a "real bad slick spot" on the walkway.  Littlefield was treated for his injuries and subsequently sued Rock-Tenn for

---

[2]   Rock-Tenn has submitted a Record of Climatological Observations for January 2010 prepared by the National Climatic Data Center in Asheville, North Carolina.  Littlefield does not object to the admissibility of this evidence, and the Court concludes that it may rely on the data contained therein, as it falls under the public record exception to the rule against hearsay.  *See* Fed. R. Evid. 803(8).

negligence and wantonness.

## IV. DISCUSSION

The Court must first determine which state substantive law governs this action.  A federal court exercising diversity jurisdiction must apply the choice of law rules of the state in which it sits.  *See Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998) ("Federal courts sitting in diversity apply the forum state's choice-of-law rules.").  Alabama applies the rule of *lex loci delicti*, which provides that "an Alabama court will determine the substantive rights of an injured party according to the law of the state where the injury occurred."  *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819, 820 (Ala. 1991).  Here, there is no dispute that Littlefield's injury occurred in Tennessee; thus, the Court will apply Tennessee substantive law to Littlefield's negligence and wantonness claims.

To bring a successful negligence action under Tennessee law, a plaintiff must establish the following: (1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate cause.  *Simmons v. Russell*, No. 01A01-9709-CV-00467, 1998 WL 251751, at *1, 2 (Tenn. Ct. App. May 20, 1998).   However, liability in premises actions, like the one here, "stems from superior knowledge of the condition of the premises."  *Blair v. W. Town Mall*, 130 S.W.3d 761, 764 (Tenn. 2004) (citing *McCormick v. Waters*, 594 S.W.2d 385, 387 (Tenn. 1980)).  Thus,

for an owner or operator of premises to be held liable for negligence in

allowing a dangerous or defective condition to exist on its premises, the plaintiff must prove, in addition to the elements of negligence, that: (1) the condition was caused or created by the owner, operator, or his agent, or (2) if the condition was created by someone other than the owner, operator, or his agent, that the owner or operator had actual or constructive notice that the condition existed prior to the accident.

*Id.*

Determining whether a defendant owes a duty to a plaintiff is a question of law for the court to decide. *Russell*, 1998 WL 251751 at *2. "Persons in control of real property have a duty to exercise reasonable care under the circumstances to prevent injury to persons lawfully on the premises." *Id.* "This duty encompasses maintaining the premises in a reasonably safe condition and includes inspecting and either removing or warning of dangerous conditions reasonably recognized by common experience and ordinary prudence." *Id.*

"Dangerous conditions caused by the natural accumulation of snow and ice are considered to be among the 'normal hazards of life.'" *Bowman v. Tennessee*, 206 S.W.3d 467, 473 (Tenn. Ct. App. 2006) (citing *Grizzell v. Foxx*, 348 S.W.2d 815, 817 (Tenn. Ct. App. 1961)). "Accordingly, the courts employ the same principles to determine the scope of a property owner's duty with regard to natural accumulations of snow and ice that they use to establish the property owner's duty with regard to other dangerous conditions." *Id.* That is, a court must "balance the foreseeability and gravity of potential harm against the feasibility and availability of alternatives that would have prevented the harm." *Hale v. Ostrow*, 166 S.W.3d 713, 716 (Tenn. 2005).

6

In this case, the Court concludes that Rock-Tenn owed no duty to Littlefield to remove the patch of ice on which he fell during the late hours of the night on January 7, 2010, in the midst of a winter storm.  Tennessee law does not require property owners "to keep their premises free of natural accumulations of snow and ice at all times." *Bowman*, 206 S.W.3d at 473.  "Instead, they are expected to take reasonable steps to remove snow and ice within a reasonable time after it has formed or accumulated." *Id.* (citing *Grizzell*, 348 S.W.2d at 817).  "When called upon to consider whether a property owner's efforts to remove snow and ice were reasonable, the court should consider, among other things, (1) the length of time the accumulation has been present, (2) the amount of the accumulation, (3) whether the accumulation could be, as a practical matter, removed, (4) the cost of removal, and (5) the foreseeability of injury." *Id.* at 474.

Here, there is no dispute that it was raining and sleeting at the time Littlefield arrived and subsequently fell at Rock-Tenn's facility, and that this rain and sleet was occurring in the midst of a winter storm.  Although the evidence is unclear as to exactly when the ice patch formed, there is no dispute that it was present for a matter of hours, at most.  The accumulation was likely small as well, since Littlefield did not notice it on his way into Rock-Tenn's facility and there is no evidence that other employees were aware of the accumulation before Littlefield's fall.  Finally, while the foreseeability of injury was somewhat high, and the cost of removal correspondingly low, it would not be practical to require Rock-Tenn to remove ice accumulation during the middle of a winter ice storm.  Accordingly, based on the above, the Court holds that Rock-Tenn did not owe Littlefield a

7

duty to remove the ice on which he fell during a recent or continuous winter storm. *See Russell*, 1998 WL 251751 at \*3 (holding that defendants did not have a duty to remove ice and snow from steps because the accumulation of frozen precipitation was both recent and continuous, and explaining that it "would not be fair to impose a duty on a landlord to continuously remove ice and snow in the middle of an ongoing winter storm").

Littlefield points to Rock-Tenn having advanced notice of the winter weather conditions in an attempt to establish that Rock-Tenn owed him a duty of care at the time in question. However, "[f]orecasts of snow or ice do not, by themselves, constitute actual or constructive notice of dangerous conditions requiring a property owner to begin taking steps either to prevent or to remove accumulations of ice or snow." *Bowman*, 206 S.W.3d at 473 (alteration to original). Indeed, "no case has ever imposed a duty on property owners to constantly monitor weather forecasts or to take steps to prevent or forestall possible accumulations of snow or ice." *Id.* Littlefield further points to Rock-Tenn having rock salt on hand at the time of his fall as evidence that it could have prevented his injuries, but this argument is equally unavailing. Simply having rock salt on hand does not impose a duty upon a business owner to prevent injuries during a recent or continuous winter storm. Thus, because Rock-Tenn owed no duty to Littlefield, summary judgment is GRANTED in favor of Rock-Tenn on Littlefield's negligence and wantonness claims.[3]

---

[3] The only count in Littlefield's complaint was for negligence and/or wantonness. Neither party addressed the wantonness claim separately in their briefs in support of and in opposition to summary judgment, and it appears that wantonness is typically a negligence inquiry under Tennessee law. *See Payne v. Novartis Pharm. Corp.*, 967 F. Supp. 2d 1223,

## V.  CONCLUSION

Accordingly, for the reasons stated above, it is hereby ORDERED as follows:

1.      Defendant Rock-Tenn Southern Container, LLC's Motion for Summary Judgment (Doc. #17) is GRANTED, and Plaintiff Johnny J. Littlefield's complaint in this case is hereby DISMISSED WITH PREJUDICE.

2.      All remaining deadlines and hearings in this matter, including the trial, are CANCELLED.

Because this Opinion and Order resolves all claims in this action, the Clerk of Court is DIRECTED to close this file.  A separate final judgment will be entered.

DONE this the 23rd day of July, 2014.

_____ /s/ Mark E. Fuller _____
UNITED STATES DISTRICT JUDGE

---

1228 n.3 (E.D. Tenn. 2013) (discussing wantonness under Tennessee law); *Bishop v. Beckner*, 109 S.W.3d 275 n.2 (Tenn. Ct. App. 2002) (noting it is unclear under Tennessee law whether wantonness is intended to be a separate cause of action from that of gross negligence, or is simply a definition of what gross negligence entails).  Accordingly, the Court concludes that if Littlefield cannot establish a prima facie case of general negligence in this action, he cannot do the same for a wantonness claim.